**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James Ernest CROCKETT,**
**Defendant–Appellant.**

**No. 94–2583.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1994.

Decided March 17, 1995.

Timothy McCarthy, II, Des Moines, IA, argued, for appellant.

Ed Kelly, Asst. U.S. Atty., Des Moines, IA, argued, for appellee.

Before MAGILL, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

James Crockett appeals his conviction for being a felon in possession of a firearm and for possessing an illegally manufactured firearm in violation of 18 U.S.C. § 922(g)(1) and 26 U.S.C. § 5861(c). Crockett argues that

the district court[1] erred in admitting photographs of the crime scene without proper foundation and in permitting the prosecutor during closing argument to project transparencies that argumentatively characterized trial testimony. Though we share the district court's concern about this use of a visual aid, we find no abuse of discretion and therefore affirm.

At 1:30 a.m. on June 26, 1993, Bushwackers nightclub in Des Moines closed for the night and its patrons emptied into the adjacent parking lot. A fistfight broke out, drawing a large crowd, and spilled into the street. Police Officer Debra Richardson approached and exited her squad car, but she remained behind the vehicle when greeted with a shower of rocks from the bystanders. As Lieutenant James Breining arrived to assist, the officers heard gunfire from the Bushwackers parking lot, and Breining ran to investigate. Both officers saw the shooter move through the parking lot and duck behind a group of parked cars. Breining approached and ordered him to come out with his hands empty and raised. Defendant Crockett emerged. Police arrested Crockett and found a .22–calibre rifle with its barrel illegally shortened a few feet away from the point of arrest. Crockett was charged with state and federal offenses. The state charges were dismissed, and these federal firearm charges proceeded to trial.

At trial, bystander Dean Lewis identified Crockett as the man Lewis saw firing the gun before he was slightly wounded by the gunfire, testimony consistent with Lewis's photo identification of Crockett shortly after the shooting. Officers Richardson and Breining testified that they never lost sight of the shooter from the time they first saw him firing the weapon in the parking lot until Crockett was arrested behind a parked car. The prosecution also presented the lineup photos displayed to Dean Lewis and photos of the crime scene. There was no fingerprint evidence, as the Des Moines police had not tested the firearm or spent shell casings found at the scene.

Four defense witnesses testified that Crockett was involved in the fistfight in front of the club and did not have a firearm. They admitted on cross examination that they lost track of Crockett when the shooting started, but Officer Richardson admitted on cross exam that the same person could not have been involved in both the fistfight and the shooting. Crockett testified in his own defense that he was guilty of fighting but not the shooting. A photograph taken after Crockett's arrest showed facial cuts and bruises consistent with a fistfight. There was conflicting evidence whether Crockett and the shooter wore similar clothing.

Though the trial took less than two days, the jury deliberated four days before convicting Crockett of both firearm offenses. After being sentenced to 235 months in prison, Crockett raises two issues on appeal.

## I.

■ Crockett first argues that the district court abused its discretion in admitting a composite photograph of the Bushwackers parking lot taken several months after the shooting. After the sponsoring witness testified that the daytime photograph generally depicted the parking lot on the night of the crime, the district court permitted defense counsel to conduct voir dire, and the witness admitted he did not know if the light fixtures shown in the photograph were working on the night of the shooting. Because lighting was relevant to the issue of identifying the nighttime shooter, Crockett objected that the photo lacked the authentication or identification required by Rule 901(a) of the Federal Rules of Evidence. However, the court admitted the photograph because it "can be of some value to the jurors in getting a visual concept of the parking lot as it existed on the date in question."

■ A trial court's determination of whether a photograph has been sufficiently authenticated "will not be overturned absent a clear abuse of discretion." *United States v. Englebrecht,* 917 F.2d 376, 378 (8th Cir.1990).

1. The HONORABLE HAROLD D. VIETOR, United States District Judge for the Southern District of Iowa.

Here, the photo was adequately authenticated as to the layout of the parking lot but not as to lighting. All witnesses testified that the parking lot was quite dark at the time of the crime. The prosecution's case turned on the police officers' testimony that they watched the shooter continuously from the point of the shooting to the point of his arrest, rather than on testimony that they could immediately identify the shooter as Crockett. Thus, the layout of the parking lot was more significant to the jury than the details of its lighting. Given defense counsel's effective voir dire on the lighting, we see no risk that the jury was misled or confused on this issue. The district court did not abuse its substantial discretion in admitting this photo.

## II.

Crockett's second issue, whether the prosecutor improperly used overhead transparencies during closing argument, is more complex and difficult. Before closing arguments, defense counsel noticed that the prosecutor, Edwin Kelly, intended to use overhead transparencies to summarize witness testimony and objected because "the jury is going to put too much influence, too much attention to the words that Mr. Kelly has put on paper versus what was said on the witness stand." The district court overruled the objection—explaining, "I let lawyers write on the blackboard a quick statement of what [they believe] the witness said"—but then instructed the jury:

Also, in the course of arguments I believe Mr. Kelly will be projecting on the screen brief summaries of what he recalls witnesses saying.... That's all it is, his recollection of what the testimony of a witness was. Again, if your recollection is different, you rely on your recollection of what the witness said in his or her testimony.

After Mr. Kelly's opening argument, during which defense counsel made no objection, the district court immediately called counsel into chambers and stated:

I have got a little concern with the prosecutor's use of these transparencies. My understanding was that these were just

brief summaries of the testimony that the witnesses gave according to the prosecutor's best recollection. By and large, that, they are, but there is one thing that bothered me, and that is that unlike the summaries of the three Government witnesses, the summaries of the defendant's witnesses contain some characterizations.

\* \* \* \* \* \*

I'm not pleased with the editorial characterizations that were used. In the future, if you use this sort of thing, I want it to be a straightforward, brief summary of what they said, and not include an editorial or argumentative characterization such as "grudgingly," and "claimed," and so forth.... I don't want you to use these on rebuttal.

Defense counsel promptly renewed his objection and moved for a mistrial. The district court responded:

THE COURT: I'm not satisfied that the matter is sufficiently prejudicial to require a mistrial, and the motion for mistrial is denied.

MR. McCARTHY [defense counsel]: Then may I suggest or request the Court give a further cautionary instruction on those?

\* \* \* \* \* \*

THE COURT: I'm going to leave it where it is. I think it best be left without further comment by the Court to the jury, and if you want to suggest to the jury that you certainly don't think that the one witness, for instance, said what he said grudgingly, you can so argue, or you can leave it alone if you want.

On appeal, Crockett argues that the district court abused its discretion by condoning prejudicial prosecutorial misconduct, the use of improper summary transparencies during closing argument.

 Crockett's argument fails because there was no prosecutorial misconduct. The use of summary charts, diagrams, and other visual aids is generally permissible in the sound discretion of the trial court. *See United States v. Caswell*, 825 F.2d 1228, 1235 (8th Cir.1987). Visual aids that summarize other

evidence are generally permissible pedagogic devices, especially when used to organize complex testimony or transactions for the jury. *See, e.g., United States v. Baker,* 10 F.3d 1374, 1411–12 (9th Cir.1993), *cert. denied,* — U.S. —, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994); *United States v. Paulino,* 935 F.2d 739, 753 (6th Cir.), *cert. denied,* 502 U.S. 914, 112 S.Ct. 315, 116 L.Ed.2d 257 (1991). Such summaries need not be admitted into evidence, and therefore can be created by counsel for or during closing argument.

■ To be sure, there are limits to the use of such devices. Some limits are the function of the trial judge's views as to the most effective and efficient way to conduct a trial. For instance, Judge Vietor observed in this case that he lets lawyers summarize witness testimony on a blackboard during closing arguments and therefore saw no reason to preclude use of the technologically more advanced overhead transparencies. Most trial judges would probably agree, but some might preclude use of some or even all such devices during closing argument, either because they are too distracting or too influential, or simply because they waste time. Rulings of this nature are virtually unreviewable on appeal.

There are other, less categorical limits that a trial judge may place on the use of visual aids that relate to the procedural posture of a particular trial. For example, here prosecutor Kelly apparently did not give defense counsel advance notice of the intended use of transparencies during closing argument. That did not concern Judge Vietor and probably would not concern most trial judges. But some might limit use of visual aids in closing argument to those approved by the court well in advance, as suggested in 5 Weinstein & Berger, *Weinstein's Evidence* ¶ 1006[07], at p. 1006–24 (1994). Again, discretionary rulings of this nature will seldom if ever be overturned on appeal.

Finally, there are substantive limits on the use of such pedagogic visual aids, limits that are reviewable on appeal under the abuse of discretion standard. The standard on appeal is necessarily a general one—whether the pedagogic device in question "was so unfair and misleading as to require a reversal."

*United States v. Possick,* 849 F.2d 332, 339 (8th Cir.1988). *See Paulino,* 935 F.2d at 753 (summary may be rejected as "too conclusory or inaccurate"). But so long as the appellate record contains both the summarizing visual aid and the evidence that it was intended to summarize, this is a review that an appellate court can meaningfully conduct, albeit deferentially.

■ Here, Crockett complains of the prosecutor's "argumentative characterization" of defense testimony—the use of transparencies stating that a defense witness *"Claimed to be* one of 6 people going to bar in same car," *"Told of being* held on ground for 30 minutes on face handcuffed," and the most argumentative, *"Grudgingly admitted* on cross he didn't see Defendant during shooting." (Emphasis added.) However, there is nothing inherently wrong with closing argument being argumentative, so long as it is proper argument. This distinction is graphically revealed in the district court's admonishment of prosecutor Kelly after his closing argument:

> I don't think using those kinds of adjectives is appropriate in putting up a brief summary of what they testified to. *You can certainly argue orally that you think that the witness was rather grudgingly admitting something, I don't mean you can't do that.* But I think ... it's not a proper use of the brief summary of their testimony to use those sorts of editorial argumentative characterizations....

(Emphasis added.) In other words, the district court did not believe that the transparencies contained improper closing argument, an issue reviewable on appeal. Rather, the court chastised prosecutor Kelly for mixing *proper* argument into his fact summaries. While we agree with that criticism, this is an issue of trial management, not appellate review.

■ We have carefully reviewed the transparencies in question. We agree with the district court that, in the context of this trial, the "argumentative characterizations" were fair closing argument. For example, one defense witness said there were six people in the car that brought Crockett to Bush-

wackers that night, while another defense witness said five were in the car. It was appropriate for prosecutor Kelly to highlight this rather minor inconsistency with the word "claimed." Similarly, while it was for the jury to decide whether a defense witness "grudgingly admitted" on cross exam that he lost track of Crockett before the shooting, there was nothing wrong with prosecutor Kelly suggesting that in closing argument.[2]

We also note that the district court took steps to cure any undue influence the transparencies might have had, which is highly relevant to an issue of this nature. *See United States v. Hernandez,* 779 F.2d 456, 460 (8th Cir.1985). First, before prosecutor Kelly's argument, the court cautioned the jury that they should rely on their recollections, not the transparency summaries. Then, after Kelly's initial closing, the court forbade Kelly to use the argumentative summaries during his rebuttal and invited defense counsel to counter the argumentative summaries in his own closing, which defense counsel did, quite effectively in our view:

> The reason I don't have the transparencies, ladies and gentlemen, is because all of you ... came in the last two days, and it takes more than just a verbatim or written record to see how someone testifies. You have to look at the way they testify, the way they say their words, and how they answer the questions.

In these circumstances, we conclude that the district court did not abuse its discretion in denying Crockett's motion for a mistrial and his request for an additional cautionary instruction.

■ Though we conclude that the use of transparencies in closing argument in this case was not reversible error, we do not encourage the use of such devices in the future. We emphasize that the district

courts have virtually unfettered discretion to regulate the use of such non-evidentiary devices, either generally or to achieve procedural fairness and regularity in a particular case. Moreover, in a criminal case, the prosecution runs a tangible risk of creating reversible error when it seeks to augment the impact of its oral argument with pedagogic devices. For example, in this case, the jury deliberated four days, and the case turned on witness credibility—the very issue addressed by the prosecutor's argumentative transparencies. Because the very purpose of a visual aid of this type is to heighten the persuasive impact of oral argument, we will necessarily be more inclined to reverse in a close case if the testimony has been unfairly summarized or the summary comes wrapped in improper argument. But that did not happen in this case.

The judgment of the district court is affirmed.

JOHN R. GIBSON, Senior Circuit Judge, concurring.

I concur in the court's decision and judgment, and in Part I. For the most part I agree with the language in Part II. However, I have considerable misgivings about the practice of the Assistant United States District Attorney displaying his personal notes of testimony using an overhead projector. Perhaps it is pedagogy, but I have some concern that this overly emphasizes and gives undue prominence to the United States Attorney's interpretation of the evidence. In the future, I hope that our district judges will be extremely cautious in allowing such methods. Perhaps capable counsel will recognize that pedagogical devices are no substitute for effective advocacy.

**2.** Thus, the argumentative portions of the summaries were comments on witness credibility that were based on the evidence, not expressions of the prosecutor's personal opinions about witness credibility. The latter are improper because "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young,* 470 U.S. 1, 18–19, 105 S.Ct.

1038, 1048, 84 L.Ed.2d 1 (1985); *see United States v. Risnes,* 912 F.2d 957, 960 (8th Cir. 1990); *United States v. Peyro,* 786 F.2d 826, 831 (8th Cir.1986). Even egregious overreaching of this nature will not result in reversal unless it affects the fundamental fairness of the trial, though it may result in discipline of the prosecutor. *See United States v. Freisinger,* 937 F.2d 383, 387 (8th Cir.1991).