UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 95-5070

ESTELITA R. PINEDA,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-93-346-WN)

Submitted: May 7, 1996

Decided: July 1, 1996

Before ERVIN and MICHAEL, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Glenn H. Carlson, Diane E. Cafferty, CARLSON & CAFFERTY,
P.C., Washington, D.C., for Appellant. Lynne A. Battaglia, United
States Attorney, Ira L. Oring, Assistant United States Attorney,
Joseph H. Young, Assistant United States Attorney, Baltimore, Mary-
land, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Estelita R. Pineda was convicted by a jury of arson, 18 U.S.C. §§ 2, 844(i) (West 1969 & Supp. 1996). Pineda appeals her conviction, contending that the district court abused its discretion in admitting evidence of prior bad acts and a summary chart. She also asserts that the district court erred by permitting the Government to use a chart in its closing argument and by denying Pineda's motion for an alibi instruction. Finding no error, we affirm.

I.

Pineda was convicted of arson of the building at 10933 Indian Head Highway, Fort Washington, Maryland, which housed Lita's Custom Interiors ("Lita's"), a drapery and fabric business owned by Pineda and her husband. The fire, caused by the ignition of flammable liquid, was set in three distinct areas at Lita's. The building sustained substantial damage, and most of the contents were destroyed.

In the months prior to the fire, both Pineda and Lita's were facing financial ruin. Electric bills for the business were in arrears, and the gas service had been terminated. Further, three mortgages for property owned by Pineda and her husband were either in arrears or in default.

Notwithstanding such dire financial straits, Pineda and her partner established a corporation to operate an elder care facility a month before the fire. They then proceeded to submit a contract, ultimately accepted, to purchase property for this business. They submitted several other contracts for the purchase of real property that were not accepted.

After the fire, Pineda submitted a proof of loss to the insurance company. The Government produced a summary witness, a federal

2

investigator, to show that Pineda's claim for contents coverage was inflated. Through this witness and over Pineda's objection, the Government introduced a series of summary charts, one of which detailed the purchases of fabric, furniture and other supplies made by Pineda over a two-year period preceding the fire. The witness then compared this evidence with Pineda's proof of loss submitted to her insurance company and concluded that the proof of claim included supposed inventory that had either never been purchased or had been purchased at a significantly lower cost than claimed.

Over Pineda's objection, the Government also introduced evidence that, in the weeks before the fire, Pineda submitted three fraudulent loan applications. These false applications, which inaccurately described Pineda's financial status, were used to obtain loans to refinance the mortgages on the three properties owned by Pineda and her husband that were facing foreclosure.

On the basis of the testimony of a defense witness that she had seen Pineda at her home approximately a half an hour after the fire was first reported, Pineda requested an alibi instruction. The district court refused to so instruct the jury. Without objection, the court instructed the jury on both the substantive arson offense and aiding and abetting.

II.

Evidence of prior bad acts may not be admitted

> to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b). The test used to determine whether the district court has abused its discretion in admitting Rule 404(b) evidence is whether the evidence is (1) relevant to an issue other than character, (2) necessary, and (3) reliable. United States v. Hernandez, 975 F.2d 1035, 1039 (4th Cir. 1992).

3

Pineda objected to the testimony concerning her fraudulent loan transactions. She contends on appeal that the evidence was irrelevant and highly prejudicial. She also asserts that she was not even a party to two of the three transactions submitted to the jury. She does not deny that the evidence, introduced through the testimony of her mortgage broker and accountant, was reliable.

The testimony that Pineda engineered three fraudulent loan transactions in the weeks before the arson was relevant because it gave a full and complete picture of the crime charged, as well as establishing Pineda's motive, intent, preparation and plan in committing the offense. While Pineda's name does not appear on two of the transactions, the testimony at trial made clear that Pineda arranged for each of the three refinancings and fraudulently used her husband and son's names only because she was not creditworthy.

In addition, we find that this evidence was necessary to provide the context of the arson. Without this proof, the evidence would have shown that Pineda had resolved her financial crisis by procuring new loans and had narrowly avoided financial collapse. However, this evidence makes clear that Pineda was desperate enough to procure fraudulent loans in order to stave off the foreclosures until she could burn her business, obtain the insurance proceeds, and pay back the loans. In addition, the evidence makes clear that Pineda's financial situation was so serious that she could not have saved her property through legal means.

Pineda next claims that the testimony should have been excluded as more prejudicial than probative, Fed. R. Evid. 403, because it unfairly impugned her character. However, the chance of prejudice in this case was very small, because arson and fraudulent loan procurement are so dissimilar that it is unlikely that the jury would have inferred that just because Pineda submitted false loan applications, she was more likely to have committed arson. Therefore, we hold that the evidence was properly admitted.

III.

Pineda contends that the district court abused its discretion by admitting the Government's summary chart of invoices for fabric pur-

4

chases into evidence pursuant to Fed. R. Evid. 1006, because it was incomplete. The purpose for which the summary was offered was to show that Pineda could not have had as much fabric inventory as she reported as lost to her insurance carrier following the fire. According to Pineda, the chart did not account for lost, misplaced, destroyed, or misfiled invoices and therefore, inaccurately depicted the discrepancy. Furthermore, Pineda contends that she was denied cross-examination of the suppliers as to the completeness of their records.

Rule 1006 provides in relevant part:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation.

In addition, the underlying materials of a summary chart must be available to the opponent for inspection. United States v. Strissel, 920 F.2d 1162, 1164 (4th Cir. 1990). A summary chart is admissible despite claims that it is "unverified" or"self-calculated," if the opponent has the opportunity to reveal any inaccuracies through cross-examination. Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 515 n.9 (9th Cir. 1985). We review the decision to admit such evidence under an abuse of discretion standard. Strissel, 920 F.2d at 1163.

Pineda does not dispute that the invoices from the suppliers were voluminous and not conveniently examined in court. In addition, the Government's summary witness established the sources of information for and the manner of preparing the chart. Pineda cross-examined this witness extensively regarding any inaccuracies in the chart or its preparation and did not call any of the suppliers as witnesses.

Because the materials underlying the chart were voluminous, could not be examined conveniently in court, and were available to Pineda for inspection, the chart was properly admitted pursuant to Rule 1006. See United States v. Foley, 598 F.2d 1323, 1338 (4th Cir. 1979), cert. denied, 444 U.S. 1043 (1980). Furthermore, because Pineda had the opportunity to reveal any inaccuracies in the chart by cross-examination of the Government's witness, the district court properly exercised its discretion by admitting the chart into evidence. See

5

United States v. Meyers, 847 F.2d 1408, 1412 (9th Cir. 1988) (no abuse of discretion in admitting summary where cross-examination permitted regarding chart's discrepancies); Frank Music Corp., 772 F.2d at 515 n.9 (same).

IV.

Pineda contends that the placard used by the Government in its summation was prejudicial. The disputed chart used the word "contract" to describe three agreements of sale which were signed by Pineda. Pineda contends that these agreements were "offers" to buy land for her elder-care business, rather than contracts. Therefore, since the chart was used to show that Pineda was living beyond her means, Pineda asserts that the inclusion of unaccepted offers was misleading.

The use of summary charts, diagrams, and other visual aids is generally permissible in the sound discretion of the trial court, especially when used to organize complex testimony or transactions for the jury. United States v. Crockett, 49 F.3d 1357, 1360-61 (8th Cir. 1995). During closing argument, both the Government and Pineda noted that the offers were never accepted. In addition, the trial court cautioned the jury that anything said in opening and/or closing argument was not evidence and that it was their recollection of the testimony that controlled. Under these circumstances, we find that the use of the chart during closing argument was not reversible error. See Crockett, 49 F.3d at 1362 (district courts have virtually unfettered discretion to regulate the use of non-evidentiary devices).

V.

Finally, Pineda contends that the district court erred in refusing an alibi instruction. Pineda asserts that she was entitled to such an instruction based on the testimony of one witness who stated that she saw Pineda at home within a half an hour of the first report of the fire.

An alibi instruction would not have been appropriate in this case. Pineda's arson count was submitted on both direct participation and aiding and abetting theories, and Pineda did not object to the govern-

6

ment's submission on aiding and abetting. Thus, the jury could have convicted Pineda of arson even in light of a persuasive alibi. Under these circumstances, the court properly refused to give an alibi instruction. United States v. Agofsky, 20 F.3d 866, 872 (8th Cir.), cert. denied, ___ U.S. ___, 63 U.S.L.W. 3266 (U.S. Oct. 3, 1994) (No. 94-5632).

VI.

We therefore affirm Pineda's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

7