**STATE of Iowa, Appellee,**

v.

**Shari M. TAYLOR, Appellant.**

No. 97–2078.

Supreme Court of Iowa.

Nov. 25, 1998.

---

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, Richard Crowl, County Attorney, and Jeff TeKippe, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, NEUMAN, and TERNUS, JJ.

HARRIS, Justice.

An evidentiary ruling is the sole challenge in this appeal from convictions of two counts of delivery of methamphetamine (more than five grams). The defendant insists evidence concerning weight measurements should have been excluded for want of a foundation to establish accuracy and reliability of the scale used. Although we will not be drawn into precedent regarding more complicated instruments, we think under these circumstances the simple scale could be taken as accurate. We affirm.

On the basis of controlled buys[1] defendant Shari Taylor and Juan Saldana were jointly charged, tried and convicted of two counts of delivery of methamphetamine (more than five grams) in violation of Iowa Code section 124.401(1)(b)(7) (1997). Over defense objections, the State was allowed to offer testimony concerning the weight of the methamphetamine as determined by a detective who used a scale at police headquarters. The detective testified he weighed the methamphetamine involved for each sale on a triple-beam scale. He determined the methamphetamine from the first sale weighed eight grams and the methamphetamine from the second sale weighed 7.9 grams.

The State also presented evidence indicating, according to the terms of the controlled buys, the purchaser was to obtain a fourth of an ounce of methamphetamine, or "two eight balls." It was explained that the term "eight ball" refers to an eighth of an ounce of methamphetamine. So two "eight balls" are equal to one-fourth of an ounce, or approximately seven grams. The evidence showed that the $520 paid for the two "eight balls" in each transaction was consistent with the street value.

Taylor admitted the drug transaction in which she sold two "eight balls," and conceded two "eight balls" equal about seven grams, though she suggested her knowledge on how much an "eight ball" weighs was based on the detective's information. Defendant said she had not weighed the substance but admitted she bought the drugs with the understanding that she was purchasing two "eight balls" and sold the same without reducing the quantity.

 I. Our scope of review on defendant's challenge to the trial court's evidentiary ruling could easily be misunderstood. We accord the trial court considerable discretion in assessing the sufficiency of a required

1. A "controlled buy" refers to a drug transaction where the police or other law enforcement authorities have control of the informant who is to make the purchase. The informant and vehicle are searched prior to the transaction and after the transaction occurs to ensure there were no drugs previously in the informant's possession. The money used to make the purchase is furnished by the police.

foundation. *State v. Quanrude*, 222 N.W.2d 467, 471 (Iowa 1974); *accord United States v. Crockett*, 49 F.3d 1357, 1359–60 (8th Cir. 1995). Whether a foundation is required is a legal matter, concerning which our review is on error. *State v. Lunsford*, 204 N.W.2d 613, 616 (Iowa 1973). We understand the question here, whether a foundation is required before the scale measurements were introduced, to be a legal one on which our review is on error.

■ II. The trial court originally sustained a defense objection to the officer's testimony for lack of foundation concerning the scale's accuracy. The officer then testified he had been trained to weigh suspect substances as a part of his training as a drug agent. He identified the triple-beam scale by name, and described it as the simplest of devices that utilizes only elementary physics principles: blocks on a beam are moved manually until the subject matter comes into balance. It employs no springs or electronic components.[2] This simple device is to be contrasted with more complicated instruments where testing for accuracy is required. *See State v. Shimon*, 243 N.W.2d 571, 573 (Iowa 1976) (radar speed measuring device must be tested for accuracy); *State v. Zell*, 491 N.W.2d 196, 198 (Iowa App.1992) (approval of devices required as foundation for breath or urine specimen test results under Iowa Code section 321J.11).

■ We have noted that simplicity bears directly on foundational requirements for expert testimony. *State v. Hall*, 297 N.W.2d 80, 86 (Iowa 1980) ("inherent understandability" supports its admissibility); *see* Mark McCormick, *Scientific Evidence: Defining a New Approach to Admissibility*, 67 Iowa L.Rev. 879, 895 (1982) (citing *Hall* for holding admissibility with minimal foundation more appropriate in matters "close to the ken of an average" lay person). If defendant really doubted the accuracy of the scale, counsel could have challenged or tested it by pretrial discovery. No discovery was sought.

We find no error.

**AFFIRMED.**

---

**2.** The officer testified he also used an electronic scale in his work, but, if it was employed in the present case, none of its results were the subject of any testimony.