**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

THEODORE THOMAS WADDELL, JR.,
          *Defendant-Appellant.*

No. 01-4421

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

WILLIAM LARNELL ECKLES, JR.,
          *Defendant-Appellant.*

No. 02-4150

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

BRIAN KEITH LATTIMORE,
          *Defendant-Appellant.*

No. 02-4249

Appeals from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, District Judge.
(CR-00-46-V)

Argued: February 25, 2003

Decided: April 11, 2003

Before WILKINSON and MOTZ, Circuit Judges, and
James P. JONES, United States District Judge for the
Western District of Virginia, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Chiege Ojugo Kalu Okwara, LAW OFFICE OF CHIEGE
O. KALU OKWARA, Charlotte, North Carolina, for Appellant Latti-
more; Denzil Horace Forrester, Charlotte, North Carolina, for Appel-
lant Eckles; Joseph McDonald Wilson, Jr., BROWNE, FLEBOTTE,
WILSON & HORN, P.L.L.C., Durham, North Carolina, for Appellant
Waddell. Thomas Richard Ascik, Assistant United States Attorney,
Asheville, North Carolina, for Appellee. **ON BRIEF:** Robert J. Con-
rad, Jr., United States Attorney, Asheville, North Carolina, for Appel-
lee.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Theodore Thomas Waddell, Jr., William Larnell Eckles, Jr., and
Brian Keith Lattimore appeal their convictions and sentences for con-
spiracy to possess with intent to distribute cocaine and cocaine base
in violation of 21 U.S.C.A. § 846 (West 1999). After consideration of
the appellants' claims of error, and for the reasons stated in this opin-
ion, we affirm.[1]

---

[1]Appellant Eckles filed his notice of appeal after sentencing but before
the entry of judgment and appellant Waddell filed his notice of appeal

I.

In December 2000, the appellants were indicted together with Robert Eugene Mott and charged with conspiracy. In addition, Mott was charged with being a felon in possession of a firearm and Eckles and Lattimore were charged with using and carrying a firearm during and in relation to a drug trafficking offense, or possessing the firearm in furtherance of such an offense. Prior to trial Mott pleaded guilty to the conspiracy charge and the government dismissed the firearms charges against all of the defendants.

At trial in May of 2001, the government contended that the three appellants, together with Mott, conspired to distribute cocaine in and around Statesville, North Carolina, from 1991 to 2000. According to Mott, the government's principal witness, he arranged for the purchase of powder cocaine in Florida and together with Waddell, transported it to Statesville, where Eckles assisted Mott in selling the drug in both its crack and powder forms.

The government presented numerous witnesses who testified that they had purchased cocaine from the appellants during this time period. While Mott testified that he had sold cocaine to Lattimore on only one occasion, Suzanne Ramseur Davis, a former girlfriend of Lattimore, testified that Eckles and Lattimore had worked together in the drug business.

The only defense witness was the defendant Eckles, who denied his involvement in any conspiracy with the other defendants. After a four-day trial, the jury convicted all of the appellants of the conspiracy charge. The jury also returned a special verdict as to each defendant finding that the conspiracy involved five kilograms or more of powder cocaine and fifty grams or more of cocaine base. At sentencing hearings on February 11, 2002, Waddell was sentenced to 188

after the guilty verdict but before sentencing. Eckles' notice was timely, *see* Fed. R. App. P. 4(b)(2), and the government does not assert any prejudice from Waddell's time of filing, *see United States v. Williams*, 81 F.3d 1321, 1327 (4th Cir. 1996). We thus have jurisdiction of the appeals.

months imprisonment, Lattimore to life imprisonment, and Eckles to 360 months imprisonment.

## II.

A principal argument made by the appellants concerns a chart used by the government during argument to the jury. This chart, exhibited to the jury during the prosecutor's rebuttal closing statement, pictorially connected the defendants by arrows with government witnesses and each other. Its display to the jury was accompanied by the following remarks of the prosecutor:

> I'm not up here with smoke and mirrors. I provided you three days worth of evidence. Good evidence, hard evidence. Photographs and drugs. Witnesses. And consistencies. The government has made its case. And if you have any questions about understanding conspiracy and how all these folks fit together, think about this. You got your three defendants: Mott, Lattimore, Waddell, and Eckles. You have the folks who testified —

> MR. FULLER [Counsel for Waddell]: Your Honor, excuse me, I hate to interrupt, but we don't know what's on this chart here.

> THE COURT: Show it to counsel, if you will.

> MS. ROSE [Prosecutor]: I think I have a copy here.

> Three defendants — the four defendants and the various witnesses that connected them. The way to show the conspiracy, the conspiracy being the connection, the agreements. What are the agreements? What took place? Stevenson, Barringer, Bines all buying from Mott. Talked about Eckles' connection as Mott's right-hand man. They all talked about the connection with Waddell and Mott and the big rolling they were doing down in Florida. Eckles and Mott, those folks who dealt with Mott and Eckles and Eckles' connection with these folks to Lattimore. That's your

conspiracy, members of the jury. If you need a picture, there it is.

You've heard the evidence. You've seen the evidence. You've heard a little bit about the law that says, yes, all these things that took place were a conspiracy. You're going to hear it again from the judge. And there's your evidence of it as well in a picture.

J.A. 779-80. Counsel for the defendants made no objection to the use of the chart, although prior to the trial court's final charge to the jury, one of the attorneys requested that the chart be taken from the view of the jury, and the court so directed.

During deliberations, the jury sent a note asking to see the chart. The trial judge responded in writing as follows:

To the foreperson: Please read this note aloud to the jurors.

Your note says: "Can we see the chart that attorney Rose referred to in her closing arguments?"

That chart is the type of thing properly used by an attorney in argument but was not admitted into evidence and so is not available to be sent back into the jury room. You will have to use your best recollection of the evidence in your deliberations.

Please let me know if you need anything further or if there are other questions.

Supp. J.A. 9.

The appellants argue that the use of the chart in argument was improper and warrants a new trial. No objection was made at trial[2] and thus we review this issue under the plain error standard. *See* Fed.

---

[2]The appellants asserted in their joint brief that an objection had been made, but conceded at oral argument that the assertion was in error.

R. Crim. P. 52(b). To establish plain error, an appellant must show (1) that there was error; (2) that the error was plain; (3) that the error affected his substantial rights; and (4) that a failure to notice the error would "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings." *See United States v. Olano*, 507 U.S. 725, 732-36 (1993).

The use of charts, placards, diagrams, and other visual aids in argument to the jury is generally permissible within the discretion of the court. *See United States v. Crockett*, 49 F.3d 1357, 1360-61 (8th Cir. 1995). They should not ordinarily be used without prior notice to opposing counsel, so that any objections can be determined before the visual aid is displayed to the jury. *See Bower v. O'Hara*, 759 F.2d 1117, 1127 (3d Cir. 1985). In the present case, the prosecutor should have advised defense counsel that she intended to use the chart in her closing. Nevertheless, the display of the chart did not constitute plain error, if error at all. The trial judge instructed the jury generally that it was their recollection of the evidence, and not that of the attorneys, that controlled (J.A. 798) and further specifically advised the jury, when it raised a question about the chart, that it was not evidence. There is no indication that the defendants were unfairly prejudiced by the use of the chart in the prosecutor's argument and we do not find in its use a ground for reversal.

### III.

There were several jury irregularities at trial that required the trial judge's attention. The appellants contend that these incidents, at least viewed cumulatively, mandate a new trial. During the trial a female juror discovered on a window sill in the ladies' restroom a stack of papers that contained certain government exhibits and the plea agreement of a witness not called to testify. Apparently the papers had been disposed of in the trash and inadvertently left in the restroom by the courthouse custodian. The trial judge questioned the juror and other female jurors who may have used the restroom and satisfied himself that no harm had been done (the juror said that the papers "looked like Greek" to her). No objection was made as to the juror's continued service.

In three other incidents, courtroom spectators were seen talking to jurors. The trial judge investigated these contacts and determined that

they were innocent. Again, no request was made to remove any of the involved jurors.

The trial judge is granted broad discretion in dealing with possible jury misconduct. *See United States v. Gravely*, 840 F.2d 1156, 1159 (4th Cir. 1988). There is no indication here that such discretion was abused. The judge acted appropriately and the appellants' argument is without merit.

IV.

Appellant Waddell assigns error to the trial court's failure to grant his motion to suppress evidence of cocaine found in a vehicle driven by him in Georgia. The trial judge conducted a suppression hearing and determined that Waddell had consented to the search.

The only witness at the suppression hearing was the Georgia police officer who had stopped Waddell at 1:45 a.m. on Interstate 95 for weaving in and out of the emergency lane. After pulling over the car, the officer asked Waddell to step out and produce his driver's license. He asked Waddell if he had been drinking and Waddell replied that he was very tired since he had been driving a long time. The officer inquired where he was coming from and Waddell said that he had taken his girlfriend to Georgia to see her family.

The officer asked Waddell for his registration or proof of insurance and Waddell responded that those papers were in the vehicle. The officer then went to the front of the car and asked the female passenger to retrieve the documents and as she was doing so, asked her where they were coming from. She told him that they had been to Orlando and Miami and were returning home.

After writing Waddell a warning ticket and telling him that he was free to go, the officer told Waddell there had been a "problem on the interstate with people trafficking in drugs, money, [and] weapons" and asked whether "there was any drugs or anything like that in [the] vehicle." Waddell hesitated for a few moments and denied that there was anything like that in the automobile. According to the officer, he then asked if he could search the car and Waddell agreed. Two other

police cars had by that time arrived at the scene, one of which included a canine officer, and a police drug dog was walked around the outside of Waddell's automobile. When the dog alerted to the presence of drugs by barking, the car was searched and a large amount of packaged cocaine was eventually found hidden in two secret compartments.

The law is settled that once a traffic stop is concluded, a continued encounter between the officer and the motorist is consensual if a reasonable person would have felt free to leave. *See United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002) ("Circumstances where the citizen would feel free to go, but stays and has a dialogue with the officer, are considered consensual."). The police officer's version of the circumstances surrounding the search here are uncontested and the officer clearly advised Waddell that he was free to leave before asking him for consent to search.

Voluntary consent is an exception to the Fourth Amendment's warrant requirement, *see Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), and the district court's finding that Waddell voluntarily gave verbal consent to the search of his vehicle was not clearly erroneous. *See United States v. Lattimore*, 87 F.3d 647, 651-52 (4th Cir. 1996) (en banc) (upholding factual finding of voluntary consent to search vehicle based on the "totality of the surrounding circumstances"). The officer's pre-consent interaction with Waddell was neither prolonged nor otherwise indicative of coercion.

## V.

The appellants argue that the evidence was insufficient to convict them of conspiracy. When reviewing the sufficiency of the evidence on direct appeal, the verdict in a criminal case must be upheld where there is substantial evidence to support it, viewing the evidence in the light most favorable to the government. *See Glasser v. United States*, 315 U.S. 60, 80 (1942). Evidence of conspiracy is usually indirect and requires no proof of a formal organization. "[I]ndeed frequently, in contemporary drug conspiracies, [the agreement] contemplates and results in only a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market . . . ."

*United States v. Banks*, 10 F.3d 1044, 1054 (4th Cir. 1993). Once it has been shown that a conspiracy exists, a defendant's connection to that conspiracy may be slight but still sufficient to convict. *See United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

Our role in reviewing a conviction for conspiracy requires "that we not examine evidence in a piecemeal fashion, but consider it in cumulative context." *Id.* at 863. With these relevant legal principles in mind, it is clear that there was adequate evidence in this case of a single conspiracy joined by each of the appellants. While some of the evidence against the appellants was given by convicted drug dealers and government informants, the credibility of a witness is the sole province of the finder of fact and is not subject to review on appeal. *See United States v. Saunders*, 886 F.2d 56, 60 (4th Cir. 1989).[3]

## VI.

The appellants also object to the trial court's sentencing decisions. Eckles and Lattimore contend that their sentences should not have been enhanced on the ground that they had possessed firearms during the commission of the offense of conviction. *See U.S. Sentencing Guidelines Manual* ("U.S.S.G.") § 2D1.1(b)(1) (2000). The application notes to the sentencing guidelines provide that the dangerous weapon enhancement for drug offenses is to be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id.*, cmt. n.3.

Eckles and Lattimore both objected to the application of the enhancement prior to sentencing. No additional evidence was presented at their sentencing hearings and the trial court relied on the facts set forth in the presentence investigation report in overruling the objections.

---

[3]Lattimore also contends that the trial court erred in not granting his requested instruction as to the jury's duty to use caution in considering the testimony of an accomplice or government informant. The court gave an elaborate instruction in that regard (J.A. 711-13), but Lattimore wanted an instruction that expressly included the names of those witnesses. However, we find that the trial judge acted well within his discretion in his charge to the jury.

The presentence investigation report showed that Eckles frequented his girlfriend's home on a regular basis and a police search of that house in 2000 turned up drugs, drug paraphernalia, a large amount of cash, and two handguns with ammunition. Similarly, the report related that in 1998 a police search of a crack house in which Lattimore was found uncovered drugs, documents relating to Lattimore, and two firearms. Moreover, in 1995 Lattimore was arrested at another home at which police seized crack cocaine, currency, a pager, and two firearms. This evidence was sufficient to support the trial court's application of the enhancement under the sentencing guidelines.

Contrary to the appellants' contention, the fact that the government dismissed prior to trial the separate charges against them for possessing a firearm in furtherance of a drug trafficking offense, 18 U.S.C.A. § 924(c)(1) (West 2000), does not affect the application of the sentencing enhancement. *See United States v. Kimberlin*, 18 F.3d 1156, 1160 (4th Cir. 1994). Moreover, despite the argument of the appellants, the principles of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), do not extend to enhancements under the sentencing guidelines where the enhanced sentence does not exceed the statutory maximum. *See United States v. Myers*, 280 F.3d 407, 416 (4th Cir. 2002).

All of the appellants appeal the trial court's denial of their objections to the drug amounts used to calculate their guideline ranges.[4] Since both powder and crack cocaine were involved in the conspiracy, and in accord with the sentencing guidelines, the probation officer calculated the drug weight for each defendant based on the equivalency of marihuana for those drugs distributed by the conspirators following the date of the defendant's involvement. *See* U.S.S.G. § 2D1.1, cmt. n.10 (2000). Based on the information contained in the presentence investigation report, as well as the evidence presented at

---

[4]Because Lattimore's offense involved five kilograms or more of powder cocaine and fifty grams or more of cocaine base and because he had two or more prior convictions for a felony drug offense, he was required to be sentenced to life imprisonment, regardless of the guideline calculations. *See* 21 U.S.C.A. § 841(b)(1)(A) (West 1999 & Supp. 2002); U.S.S.G. § 5G1.1(a) (2000).

trial, the trial judge overruled each defendant's objection to drug weight.

In calculating drug amounts, the court may consider any relevant information, provided that the information has sufficient indicia of reliability to support its probable accuracy. *See United States v. Uwaeme*, 975 F.2d 1016, 1021 (4th Cir. 1992). Even hearsay alone can provide sufficiently reliable evidence of drug quantity. *See id.* at 1019. The district court's factual determination of the amount of drugs attributable to a defendant is reviewed for clear error. *See United States v. McDonald*, 61 F.3d 248, 255 (4th Cir. 1995), *overruled on other grounds, United States v. Wilson*, 205 F.3d 720, 724 n.1 (4th Cir. 2000). The sentencing guidelines do not demand precision; they recognize that the court often must approximate the amount of drugs, erring on the side of caution. *See United States v. Cook*, 76 F.3d 596, 604 (4th Cir. 1996). Thus, we afford the district court broad discretion in making this estimation. *See id.* We find that the trial court here did not err in its calculation.

## VII.

We have carefully reviewed the other errors asserted by the appellants and find them without merit. Accordingly, the judgments of the district court are affirmed.

*AFFIRMED*