# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-1383

_____

James Bradshaw

*Plaintiff - Appellee*

v.

FFE Transportation Services, Inc.

*Defendant - Appellant*

American Eagle Lines; Conwell Corporation

*Defendant*s

David A. Booker, Sr.

*Defendant - Appellant*

John Does, 1,2,3,4,5

*Defendant*

_____

No. 12-2161

_____

James Bradshaw

*Plaintiff - Appellant*

v.

FFE Transportation Services, Inc.

*Defendant - Appellee*

American Eagle Lines; Conwell Corporation

*Defendant*s

David A. Booker, Sr.

*Defendant - Appellee*

John Does, 1,2,3,4,5

*Defendant*

————————

Appeal from United States District Court
for the Western District of Arkansas - Hot Springs

————————

Submitted: January 16, 2013
Filed: June 3, 2013

————————

Before RILEY, Chief Judge, WOLLMAN and GRUENDER, Circuit Judges.

————————

RILEY, Chief Judge.

This is a diversity case,[1] filed by James Bradshaw against FFE Transportation Services, Inc. (FFE), David A. Booker, Sr., and others. The jury returned a verdict

————————

[1] 28 U.S.C. § 1332(a).

of $1,000,000 in favor of Bradshaw, and the district court[2] entered judgment on that verdict. FFE and Booker now appeal. We affirm.

## I.    FACTS

This case arose out of a motor vehicle accident occurring on January 18, 2006, outside Hope, Arkansas, in which a semi-tractor trailer driven by Booker crashed into Bradshaw's semi-tractor trailer, injuring Bradshaw. FFE and Booker conceded Booker negligently caused the accident while working on behalf of FFE. The only issue at trial was the extent of Bradshaw's damages.

On January 19, 2010, the district court entered a final scheduling order setting deadlines for the parties to conclude discovery, file certain motions and pretrial disclosures, and disclose expert witnesses. Anticipating a trial date of February 14, 2011, the order required the parties to conclude discovery by October 14, 2010, disclose all initial expert witnesses by ninety days before the discovery deadline, and disclose all rebuttal expert witnesses within forty-five days of the discovery deadline. The scheduling order provided "[e]xcept in extraordinary circumstances, problems with discovery which are not brought to the Court's attention in time for the opponent to make a proper response and the Court to make an informed ruling before the close of discovery will be deemed waived."

On June 25, 2010, Bradshaw transmitted interrogatory answers and document production responses to FFE and Booker. These answers and documents disclosed the identities of Bradshaw's treating physicians and the fact Bradshaw intended "to call one or more treating physicians to testify about [Bradshaw's] examination, diagnosis, treatment, prognosis, permanent impairment caused by the collision in this case, and future medical expenses." The documents identified Dr. Mark Floyd,

---

[2]The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

Bradshaw's primary care physician, and Dr. Terry Hutson, Bradshaw's treating chiropractor, as two of Bradshaw's treating physicians. The disclosure provided "[t]o the extent more detailed opinions are sought, the Defendant's counsel is invited to take the depositions of [Bradshaw's] treating physicians."

On February 11, 2011, FFE and Booker filed objections to Bradshaw's proposed witness list, opposing seven proposed witnesses. The objections did not include any objections to Drs. Floyd or Hutson. On February 14, 2011, the parties stipulated to using selected portions of Dr. Floyd's video deposition testimony at trial.

The case was tried before a jury from February 15, 2011 to February 18, 2011. At trial, Bradshaw offered testimony from both doctors. Dr. Hutson testified Bradshaw suffered spinal injuries, including "severe instability" at the C-5 vertebrae, resulting in permanent impairment. Dr. Floyd testified, via video deposition, that Bradshaw's neck and shoulder injuries were caused by the motor vehicle accident.

On February 18, 2011, the jury returned a $1,000,000 verdict for Bradshaw. FFE and Booker moved for a new trial, arguing Bradshaw's counsel improperly asked the jury to award punitive damages and the award was excessive. The district court granted the motion.

The district court scheduled the second trial for January 10, 2012. On October 31, 2011, FFE and Booker moved to conduct an independent medical examination of Bradshaw. The district court denied the motion on November 22, 2011. On November 30, 2011, FFE and Booker informed Bradshaw they intended to call Dr. Raymond Peebles at the second trial to testify based on Dr. Peebles's review of Bradshaw's medical records. On December 16, 2011, FFE and Booker told Bradshaw they would also call Dr. Shane McAlister as a witness. Bradshaw objected to FFE's and Booker's attempt to call these witnesses because they were not identified during discovery before the first trial or "timely disclosed before the second trial." FFE and

-4-

Booker countered that Bradshaw's medical witnesses, Drs. Floyd and Hutson, gave "surprise testimony" at the first trial, and these new witnesses were necessary to respond to this surprise testimony. The district court sustained Bradshaw's objection, explaining

> [a]lthough a new trial has been ordered, thus occasioning a change in the trial date, nothing else has changed with respect to the Court's Final Scheduling Order or any of the Court's other pre-trial Orders. A witness who was not timely disclosed prior to the initial trial date would not have been allowed to testify then, nor should he be allowed to do so now. If either side were allowed to name new witnesses, it would be unfair to deny the opponent the opportunity to depose the newly named witness. That would re-open the discovery process, which closed October 31, 2010, and the court declines to follow that course of action.

The district court also noted FFE and Booker had waived any challenges to Bradshaw's witnesses by failing to object before the close of discovery.

FFE and Booker alternatively moved to exclude the testimonies of Drs. Floyd and Hutson, which the district court denied. On December 30, 2011, FFE and Booker suggested to Bradshaw that FFE and Booker potentially would object to playing portions of Dr. Floyd's deposition testimony to the jury. Bradshaw moved the court to enforce the parties' earlier stipulation to permit the introduction of the deposition testimony. The district court granted Bradshaw's motion, reasoning that the lawyers at the first trial made a tactical decision to stipulate to certain evidence in lieu of filing objections on the eve of trial and concluding that agreement should be binding on retrial.

At the second trial, Dr. Hutson once again testified that Bradshaw's neck injury was caused by the truck accident. Dr. Hutson utilized three previously undisclosed anatomical illustrations purporting to depict the injuries Bradshaw suffered as a result of the truck accident. The district court permitted the exhibits, instructing the jury

that, although Dr. Hutson's testimony should be considered as evidence, the illustrations were demonstrative exhibits, used merely to explain testimony, and were not substantive evidence. Shortly after Dr. Hutson began to refer to the demonstrative exhibits, the district court intervened, noting Dr. Hutson was "stand[ing] in front of th[e] jury like a professor in front of a classroom . . . explain[ing] the[] exhibits." The district court cautioned Bradshaw's counsel to use the demonstrative exhibits only as a visual aid to help the jury understand Dr. Hutson's testimony. As in the first trial, portions of Dr. Floyd's video deposition were played for the jury. FFE and Booker did not call any witnesses at the second trial. The jury returned a verdict of $1,000,000 for Bradshaw. FFE and Booker appeal.

## II.    DISCUSSION
### A.    Applicable Law

In this diversity of citizenship case, the Federal Rules of Civil Procedure and Federal Rules of Evidence govern the disputes concerning discovery and the admission of evidence. See Hanna v. Plumer, 380 U.S. 460, 471-74 (1965) (deciding the Federal Rules of Civil Procedure, if validly enacted under the Rules Enabling Act, 28 U.S.C. § 2072, apply in diversity cases); Hiatt v. Mazda Motor Corp., 75 F.3d 1252, 1255 (8th Cir. 1996) (explaining "in a suit based on diversity of citizenship jurisdiction the federal courts apply federal law as to matters of procedure but the substantive law of the relevant state"); Warner v. Transamerica Ins. Co., 739 F.2d 1347, 1351 n.6 (8th Cir. 1984) (declaring "issues of admissibility of evidence in diversity cases are questions of federal law").

"'Decisions concerning the admission of expert testimony lie within the broad discretion of the trial court, and these decisions will not be disturbed on appeal absent an abuse of that discretion.'" Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003) (quoting Peitzmeier v. Hennessy Indus., 97 F.3d 293, 296 (8th Cir. 1996)). Likewise, our review of the

district court's discovery rulings is "both narrow and deferential." Moran v. Clarke, 296 F.3d 638, 650 (8th Cir. 2002) [(en banc)]. Relief will be granted "on the basis of erroneous discovery [rulings] only where the errors 'amount to a gross abuse of discretion resulting in fundamental unfairness'" Id. (quoting Bunting v. Sea Ray, Inc., 99 F.3d 887, 890 (8th Cir. 1996)).

Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 360 (8th Cir. 2003).

### B.     Bradshaw's Medical Witnesses

FFE and Booker contend the district court erred in allowing Drs. Floyd and Hutson to testify at the second trial because Bradshaw did not properly disclose the content of these witnesses' opinion testimony before the close of discovery for the first trial. See Fed. R. Civ. P. 26(a)(2)(B), (C) (providing a party intending to offer expert testimony must disclose to the adverse party either a written report prepared by the expert or a summary of the facts and opinions that will form the basis of the expert's opinion). We reject this contention.

In Bradshaw's June 20, 2010 disclosures, Bradshaw alerted FFE and Booker that Bradshaw would be calling "one or more treating physicians to testify about [Bradshaw's] examination, diagnosis, treatment, prognosis, permanent impairment caused by the collision in this case, and future medical expenses." Bradshaw also invited FFE and Booker to depose his treating physicians. FFE and Booker did not raise or object to Bradshaw's alleged failure to disclose the content of the doctors' testimonies and request more information before the close of discovery in the first trial. FFE and Booker actually stipulated to introducing the selected portions of Dr. Floyd's video deposition testimony that were played to the jury. The district court did not abuse its discretion in concluding FFE and Booker waived their objections to Bradshaw's medical witnesses by failing to make these objections at the time set in the district court's discovery scheduling order. See Roberts, 352 F.3d at 360.

FFE and Booker also maintain the district court should have permitted Drs. Peebles and McAlister to testify in response to the opinion evidence offered by Drs. Floyd and Hutson. The district court declined to reopen discovery after declaring a mistrial in the first trial, and this decision was not an abuse of discretion. "Once discovery has closed in a case, it is the district court's discretion whether or not to allow it to be reopened. The fact that a case has been reset for trial is not automatically a justifiable reason to reopen discovery." Harris v. Steelweld Equip. Co., 869 F.2d 396, 400 (8th Cir. 1989); see also Anderson, 340 F.3d at 525 (holding "the district court was not required to reopen discovery to give [the party] a second bite at the apple").

## C. Demonstrative Exhibits

FFE and Booker contend the district court abused its discretion in permitting Dr. Hutson to use undisclosed anatomical drawings at the second trial. Under the circumstances of this case, we disagree.

FFE and Booker assert the anatomical drawings were substantive, not merely demonstrative, and there was insufficient evidence the depictions were substantially similar to Bradshaw's injuries, citing McKnight ex rel. Ludwig v. Johnson Controls, Inc., 36 F.3d 1396, 1402 (8th Cir. 1994) ("[E]xperimental evidence falls on a spectrum and the foundational standard for its admissibility is determined by whether the evidence is closer to simulating the accident or to demonstrating abstract scientific principles. The closer the experiment gets to simulating the accident, the more similar the conditions of the experiment must be to the accident conditions."). We do not necessarily agree with FFE and Booker that the McKnight standard for experimental evidence governs admissibility of demonstrative medical illustrations. See Crockett, 49 F.2d at 1361 (explaining the standard for use of "pedagogic visual aids" is "whether the pedagogic device in question 'was so unfair and misleading as to require a reversal'" (quoting United States v. Possick, 849 F.2d 332, 339 (8th Cir. 1988))). Under either standard, use of these visual aids was within the trial court's

discretion. Dr. Hutson testified "a retired medical illustrator" made the drawings and "the[] illustrations accurately show[ed Dr. Hutson's] diagnosis of th[e] injuries." To the extent Bradshaw was required to establish the illustrative anatomical drawings were substantially similar to Bradshaw's injuries and not grossly misleading, Dr. Hutson's testimony was sufficient.

The district court properly instructed the jury on the correct use of the anatomical drawings, stating Dr. Hutson's testimony was evidence and the exhibits were visual aids and "not substantive evidence . . . of anything." When Dr. Hutson's testimony began to rely too heavily on the exhibits, the district court intervened and limited the scope of the testimony. We presume the jury follows the court's limiting instructions. See Loehr v. Walton, 242 F.3d 834, 837 (8th Cir. 2001). The district court did not abuse its discretion in permitting Bradshaw to use the anatomical drawings at trial.

FFE and Booker also objected to Bradshaw's timing, asserting the challenged exhibits were not disclosed to FFE and Booker until two days before the trial. In United States v. Crockett, 49 F.3d 1357, 1360-61 (8th Cir. 1995), the prosecutor utilized undisclosed visual aids, which summarized the witness testimony in the case. We recognized "[t]he use of summary charts, diagrams, and other visual aids is generally permissible in the sound discretion of the trial court." Id. at 1360. The trial court in Crockett permitted the prosecution to use the undisclosed summary exhibits, and we held "discretionary rulings of this nature [visual aids] will seldom if ever be overturned on appeal." Id. at 1360-61. "[S]ome [trial courts] might limit use of visual aids . . . to those approved by the court well in advance," id. at 1361, but we will not disturb the trial court's discretionary ruling in this case.

FFE and Booker further contend these anatomical drawings were improper because they were used in conjunction with expert opinion testimony yet were not timely disclosed before trial, as required by Federal Rule of Civil Procedure

26(a)(2)(B)(iii) (requiring any witnesses "retained or specifically employed to provide expert testimony" to disclose "any exhibits that will be used to summarize or support" the expert's opinion testimony).

Because Dr. Hutson did not provide a report, whether early disclosure of Dr. Hutson's anatomical drawings was dictated by Rule 26(a)(2)(B) is unclear. Compare Fed. R. Civ. P. 26(a)(2)(B)(iii) with id. 26(a)(2)(C) (establishing a lesser disclosure requirement for witnesses not providing expert reports); see also Brooks v. Union Pac. R.R., 620 F.3d 896, 899-900 (8th Cir. 2010) (explaining a treating physician is subject to the Rule 26(a)(2)(B) disclosure requirements when offering an opinion as to causation).[3] We need not decide this issue because FFE did not adequately raise this specific objection before the district court.

FFE and Booker objected when the drawings were produced on the eve of trial, and argued they had no opportunity (1) to conduct discovery or (2) challenge the drawings with their own expert testimony.[4] FFE and Booker did not object that these drawings should have been submitted as part of a Rule 26(a)(2)(B) report. Because FFE and Booker did not sufficiently articulate for the district court any Rule 26(a)(2)(B)(iii) objection to the demonstrative aids, the district court did not abuse its discretion in allowing the anatomical drawings. See Forklifts of St. Louis, Inc. v. Komatsu Forklift, USA, Inc., 178 F.3d 1030, 1035 (8th Cir. 1999) (upholding the admission of expert testimony because the objecting party's "contentions were not reflected in specific objections to the direct testimony . . . at trial, and [the objecting

---

[3]Brooks involved a prior version of Rule 26 which even less clearly distinguished between "retained" expert witnesses and other witnesses qualified to provide expert testimony. See Brooks, 620 F.3d at 899 n.3. We need not consider whether the 2010 revisions to Rule 26 modified our holding in Brooks.

[4]FFE and Booker did not explicitly request a continuance or the opportunity to depose Dr. Hutson or the artist regarding the drawings.

-10-

party] d[id] not tell [our court] how th[o]se issues were otherwise properly preserved for appeal").

## III.   CONCLUSION

We affirm.[5]

_____

<hr />

[5]Because we affirm the second jury's verdict, we need not consider Bradshaw's conditional appeal of the district court's order overturning the first jury's verdict.