# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1242

_____

| | | |
|---|---|---|
| Teresa Roberts; Scott Roberts; Jourdan Penn, | * | |
| | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Shawnee Mission Ford, Inc.; | * | |
| Albright-Roberts Chevrolet, Inc.; | * | |
| Roberts-Albright Pontiac, Inc., | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  September 8, 2003

Filed:  December 11, 2003

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Teresa Roberts and others (hereinafter collectively Roberts) brought suit in the United States District Court for the District of Kansas alleging a fraudulent conspiracy and odometer-rollback scheme. This case involves a request for subpoenas made in Missouri federal court for the case pending in a Kansas federal

court. Following other discovery, Roberts obtained subpoenas from the district court[1] for two Missouri dealerships, Albright-Roberts Chevrolet, Inc. and Roberts-Albright Pontiac-GMC, Inc. ("Albright Dealerships"), who were not parties to the suit. The district court granted the Albright Dealerships' motion to quash the subpoenas concluding the information sought was not relevant or reasonably calculated to lead to the discovery of admissible evidence, and Roberts appealed. We affirm.

I

Roberts purchased a 1996 Oldsmobile Cutlass and a 1998 Chevrolet Blazer from Shawnee Mission Ford ("Shawnee Ford"), and later discovered the odometers had been rolled back on both vehicles. Roberts settled with Shawnee Ford for $250,000, but still has claims pending against individual defendants Stephen Summers, Art Korn, and James Nance, who operate an automobile dealership under the name of Interstate Exchange. Interstate Exchange apparently bought the two vehicles from Interstate Auto and sold them to Shawnee Ford, which in turn sold the vehicles to Roberts.

During the pendency of her suit, Roberts concluded the Albright Dealerships were likely able to provide relevant evidence regarding the sale of automobiles by a former employee of one of the Albright Dealerships, Pete Angotti, allegedly involved in the odometer-fraud scheme.[2] Thus she obtained subpoenas requesting information from the Albright Dealerships in the district court. The subpoenas requested all documents reflecting dealings with Interstate Exchange, Art Korn, James Nance, or Stephen Summers; all documents reflecting the purchase of any vehicle by Stephen

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

[2] Pete Angotti is not a party to the underlying suit.

-2-

Summers or Cheryl Scrivner[3]; and all documents reflecting the purchase and subsequent sale of any vehicle from Stephen Summers or Cheryl Scrivner. Roberts concedes the vehicles in question "never passed through either of these witness [sic] [Albright] dealerships." App. 97. Nevertheless, in an attempt to avoid the litigation that is the subject of this appeal, the Albright Dealerships complied with the subpoenas, providing extensive documentation. Roberts made no objection to the responses.

Defendants Summers and Shawnee Ford filed a motion for protective order concerning, inter alia, the depositions of Pete Angotti and an Albright Dealership representative in the United States District Court for the District of Kansas, in which the depositions were to take place, on the grounds it would be unduly burdensome and unlikely to lead to the discovery of admissible evidence. The court ordered the noticed depositions to proceed holding, inter alia, the testimony of the Albright representative would likely lead to the discovery of admissible evidence. A factual underpinning of the court's decision was one of the vehicles purchased by Roberts had been sold by Pete Angotti.

Subsequently, Roberts subpoenaed records and information from the Albright Dealerships a second time. These subpoenas requested substantially the same information as the first set, and further included demands for Angotti's employment records; documents reflecting misconduct by Pete Angotti while employed; and documents reflecting communications between the respective dealerships and Art Korn, James Nance, Stephen Summers, Cheryl Scrivner, Gary Miller, and Pete Angotti. Roberts served the subpoenas *duces tecum* on the Albright Dealerships located in Missouri. They were captioned as issued by the district court there, which

_____

[3]Cheryl Scrivner purchased a new vehicle from Albright-Roberts Chevrolet, Inc., and at the urging of Angotti sold her used vehicle directly to Interstate Auto in lieu of trading it in.

is the district in which the depositions were to take place. The Albright Dealerships moved to quash the subpoenas.

The district court granted the motion to quash the subpoenas without holding an evidentiary hearing. Roberts filed a motion for reconsideration, wherein she requested the court either force the Albright Dealerships to comply fully with the subpoenas or order a full evidentiary hearing to be conducted on the matter. The court denied the motion, concluding, inter alia, the subpoenas were not directed at obtaining relevant, discoverable evidence and Roberts was on a "fishing expedition."

II

Appellate review of a district court's discovery rulings is "both narrow and deferential." Moran v. Clarke, 296 F.3d 638, 650 (8th Cir. 2002). Relief will be granted "on the basis of erroneous discovery [rulings] only where the errors 'amount to a gross abuse of discretion resulting in fundamental unfairness.'" Id. (quoting Bunting v. Sea Ray, Inc., 99 F.3d 887, 890 (8th Cir. 1996)). This court also applies an abuse of discretion standard to relevancy determinations. See Miscellaneous Docket Matter # 1 v. Miscellaneous Docket Matter # 2, 197 F.3d 922, 925 (8th Cir. 1999).

III

Roberts contends the district court improperly quashed the subpoenas. She argued the district court failed to defer to the forum court's (i.e., the United States District Court for the District of Kansas) overall control of discovery, and effectively

"overruled"[4] the previous order of the forum court, which allowed the depositions of Angotti and the Albright Dealership representative.

These arguments are meritless. First, the question resolved by the Kansas federal court is entirely distinct from that resolved by the Missouri District Court. The Kansas Court did, in the context of denying the protective order sought by an individual defendant, determine deposing witnesses (including Pete Angotti and a designated representative of an Albright dealership) could possibly lead to the discovery of relevant evidence. It does not, however, follow from this limited conclusion that all of the evidence sought by Roberts in the second set of subpoenas is necessarily relevant.

Subsequent to the Kansas Court's order allowing the depositions, Roberts conceded neither of the vehicles at issue were sold through either of the Albright Dealerships. Thus, the Kansas court's denial of the protective order actually rests on what Roberts concedes is an erroneous factual premise: The Albright Dealerships (through Pete Angotti) sold one of the vehicles at issue. Accordingly, we reject Roberts's contention the district court effectively "overruled" the Kansas court's order by quashing the Albright Dealership subpoenas.

We turn now to a review of the district court's relevancy determination. As to relevancy, the court held the subpoenas "were not directed at obtaining relevant, discoverable evidence" and Roberts was on a "fishing expedition." App. 201. The court was convinced Roberts was "simply overreaching in the second set of subpoenas directed at the [Albright] Dealerships." Id. We find Roberts's challenge

_____

[4]Roberts concedes she is not invoking a theory of collateral estoppel. She does not, however, proffer any other cognizable theory in support of her "overruling" argument.

-5-

to the district court's finding of irrelevancy unpersuasive, especially in view of the applicable abuse of discretion standard of review.

Federal Rule of Civil Procedure (Fed. R. Civ. P.) 26 provides "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Relevant information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit. Id. See also Fed. R. Civ. P. 45(c) (authorizing the court to ensure a party responsible for the issuance and service of a subpoena takes reasonable steps to avoid imposing "undue burden or expense" on a person subject to a subpoena).

Roberts emphasizes the district court erred in its determination of relevancy because the court "apparently just did not grasp or was confused" about the nature of the underlying case. Specifically, she points to the district court's statement the underlying action "primarily involved" an odometer-fraud scheme involving Shawnee Ford. Roberts takes issue with this statement and contends the case "primarily involved" a separate entity, Interstate Exchange, because the rollbacks were actually done by the Interstate defendants and Shawnee Mission Ford had been dismissed from the case well before the subpoenas were even issued. We conclude this statement on the part of the district court is not indicative of a misunderstanding of the case – Roberts purchased the two vehicles at issue from Shawnee Ford, and it settled with Roberts for a sum of $250,000. These facts suggest Shawnee was a key entity in the underlying action, and accordingly, we find no merit in Roberts's argument to the contrary.

The second set of subpoenas seek documents and testimony regarding numerous vehicles bought or sold by the Albright Dealerships. Roberts claims she

seeks information regarding any other possible sales of vehicles with rolled-back odometers to acquire circumstantial evidence regarding the transactions surrounding the two vehicles she purchased. Specifically, Roberts seeks to establish whether Summers purchased new vehicles from Albright Pontiac, with the assistance of Pete Angotti. She also seeks information pertaining to Summers's misuse of his employee discount plan. Roberts seeks this information, inter alia, to support her claim for punitive damages.

Roberts also contends she requires evidence concerning Pete Angotti. She seeks evidence regarding his conduct while employed at Albright-Roberts, as well as his personnel and financial records. Roberts states she seeks to establish Angotti's role as a conspirator in the odometer rollback scheme. She apparently desires to assume an investigatory/prosecutorial role regarding Angotti and other purported participants in the alleged scheme. The implication is Roberts actually seeks not only information to buttress her action as it presently stands, but also additional defendants or plaintiffs to join in her suit.

Having carefully considered Roberts's arguments, we conclude the district court did not abuse its discretion in granting the motions to quash. Significantly, Roberts sought and received much of the information pertaining to vehicles bought or sold by the Albright Dealerships in response to her first set of subpoenas. She received documents reflecting dealings with Interstate Exchange and the individual defendants, and all documents reflecting the purchase and subsequent sale of any vehicle by or from Stephen Summers or Cheryl Scrivner. She did not object to the responses to the first set of subpoenas. Further, Roberts concedes none of the vehicles which are the subject of her suit in Kansas were sold through either of the Albright Dealerships. This factor weighs heavily in favor of affirming the district court's grant of the motions to quash.

In the alternative, Roberts contends the district court should have modified rather than quashed the subpoenas. Roberts fails to point to any isolated portion of the subpoenas that should have been enforced, however, and we have identified none. Thus we reject this argument.

Roberts further contends the district court denied her due process right to subpoena witnesses and to obtain evidence necessary for proof of her claims. This argument is legally unavailing. The district court did no more than exercise its discretion to ensure the discovery sought was relevant or reasonably calculated to lead to the discovery of admissible evidence. See, e.g., Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984) (stating because of liberal discovery and the potential for abuse, the federal rules "confer[] broad discretion on the [district] court to decide when a protective order is appropriate and what degree of protection is required").

IV

We affirm the district court's decisions in all respects.

_____