# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2425

_____

| | |
|---|---|
| Charles Pointer, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Missouri. |
| DART, | * |
| | * |
| Appellee. | * |

_____

Submitted: February 18, 2005
Filed: August 1, 2005

_____

Before WOLLMAN, HANSEN, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Charles Pointer appeals from the district court's denial of his motion for a new trial following a jury verdict adverse to his claims of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. We affirm.

## I.

Pointer is an African American male who holds a master's degree in counseling education. From January 7, 2000, to May 18, 2000, he was employed as an outpatient counselor by Drug Alcohol Rehabilitation and Treatment, Inc. (DART), a drug and alcohol treatment organization in St. Louis, Missouri. Pointer's employment contract

with DART stipulated that he could be "terminated with or without cause, and with or without notice, at any time, at the option of either DART or [him]self, except as otherwise provided by law."

DART contracted with the Probation and Pretrial Services Office of the United States District Court for the Eastern District of Missouri (Office) to provide services on their behalf. Milford Eaves, a DART employee, directed the contract program and supervised Pointer. When Eaves took a leave of absence, he selected Cheryl Gardine (a Caucasian female) instead of Pointer to be his temporary replacement. Eaves testified that although Gardine was "technically" unqualified for the position because she lacked a master's degree (a requirement under DART's contract with the Office), the appointment was "considered an interim procedure and not something that would be implemented beyond . . . a temporary period of time." Eaves also testified that Office employees Kevin Carbol, Dan McClintock, and Thomas Caruso had indicated to him that they were comfortable with Gardine's performance and supported her selection for the temporary position.

Pointer's clients included individuals on parole and serving probation who were referred by the Office. Eaves testified that Carbol and McClintock complained to him about Pointer's performance. Eaves stated that Carbol told him on two or three occasions that he had difficulty reading Pointer's notes and was surprised and disappointed by Pointer's low documentation standards and that Carbol admonished him "for not finding a replacement [for Pointer] sooner." According to Eaves, McClintock also complained to him about Pointer at least twice. Eaves shared these concerns with senior managers at DART, who instructed him to resolve the problem.

Eaves met with Pointer on several occasions to discuss his work performance. One of the issues that they discussed was Pointer's handwriting. Because Pointer's cursive was difficult to read, Eaves asked Pointer to write in print. When Pointer's handwriting remained illegible, Eaves gave Pointer a "supervision document" that set

forth a time frame for him to improve his handwriting. When Pointer continued to show a lack of improvement, Eaves fired him. Pointer's termination letter indicated that he was fired for "clinical documentation deficiencies." The letter indicated that Eaves had discussed these and other issues with Pointer on three prior occasions, and Pointer acknowledged by signing at the bottom of the letter that he had been given an opportunity to correct them.

Pointer sued DART for racial discrimination, alleging failure to promote (arising from Eaves's selection of Gardine rather than Pointer as his temporary replacement) and wrongful discharge. After deposing Eaves, Pointer requested informal interviews with Carbol, McClintock, and Caruso. The Office denied this request and suggested that Pointer subpoena the individuals. Pointer served all three with subpoenas and filed a motion to enforce the subpoenas.[1] At a hearing on the motion, Pointer argued that the testimony of the Office employees could undermine Eaves's contention that he fired Pointer at their behest and under pressure from them. The district court ordered that the Office produce a copy of its contract with DART, which would establish that anything that Office employees said to Eaves would have had "no legal effect" because DART's personnel decisions were its own responsibility. The district court then denied the motion to enforce the subpoenas.

The matter proceeded to trial, and a jury found in favor of DART. The district court denied Pointer's motion for a new trial (which asserted that Pointer had been prejudiced by the district court's decision not to enforce the subpoenas), noting that "[e]ven assuming that Plaintiff could demonstrate that the subpoenas at issue should have been enforced, Plaintiff has failed to persuade the Court that testimony from the probation officers would likely have produced a different result in this case."

---

[1]Pointer apparently filed his motion after the district court *sua sponte* scheduled a hearing to determine whether the subpoenas would be enforced. It appears that the Assistant United States Attorney representing the Office had contacted the district court *ex parte* and urged it to rule on the matter.

## II.

We review orders quashing a subpoena for abuse of discretion. <u>Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2</u>, 197 F.3d 922, 925 (8th Cir. 1999). On timely motion, a district court shall quash or modify a subpoena if the subpoena fails to allow reasonable time for compliance, requires a witness who is not a party to travel more than 100 miles, requires disclosure of privileged or protected matter, or subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iii). A subpoena must also seek relevant information. <u>Roberts v. Shawnee Mission Ford, Inc.</u>, 352 F.3d 358, 360-62 (8th Cir. 2003); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . ."). We review relevancy determinations for abuse of discretion. <u>Roberts</u>, 352 F.3d at 360 (citation omitted).

The district court failed to identify any of the reasons listed in Rule 45 as the basis for its decision to deny Pointer's motion to enforce the subpoenas. Further, nothing in the record suggests that any of the subpoenaed witnesses would be inconvenienced (all three worked in the same courthouse in which they were called to testify) or that Pointer sought privileged information through their testimony. Whether the testimony of the Office employees was relevant is a closer call. The district court assumed that the testimony was not relevant because the Office employees had no control over DART's personnel decisions. Pointer, however, intimated that he sought the testimony for impeachment purposes, not to establish the Office's influence on personnel decisions. Mot. Hrg. Tr. at 3 ("This is a case where [Eaves] said, 'These men told me to do it, and I've done it.' And we just want to find out if that's the truth."). The potential testimony thus fell within the broad scope of Rule 26. Accordingly, we conclude that the district court abused its discretion in denying the motion to enforce the subpoenas.

## III.

Although the district court erred in failing to enforce the subpoenas, Pointer must also show that the district court abused its discretion in denying his motion for a new trial. See O'Dell v. Hercules, Inc., 904 F.2d 1194, 1200 (8th Cir. 1991) (citation omitted). To do so, he must demonstrate that the district court's evidentiary error affected his substantial rights. Id.; see also Fed. R. Evid. 103(a) (erroneous evidentiary ruling must affect a substantial right of the party). The error must be such that a new trial "would be likely to produce a different result." O'Dell, 904 F.2d at 1200 (citation omitted). The trial court is in the best position to determine whether the alleged error affected the substantial rights of any party sufficient to warrant a new trial, and the trial court's decision is entitled to considerable deference. Id. (citation omitted).

Eaves testified in his deposition that Carbol and McClintock pressured him about finding a replacement for Pointer because Pointer's work "did not fall within what they considered to be appropriate or professional documentation standards." Pointer's theory of prejudice is that, had the district court enforced the subpoenas, Carbol and McClintock would have denied Eaves's allegations, which "undoubtedly would have called into question[] [Eaves's] credibility and [a]ffected the outcome of the trial." Pointer Reply Br. at 9.[2] Pointer's speculative assumption as to what Carbol and McClintock's testimony would have been is unsupported by the record. Cf. Manning v. Lockhart, 623 F.2d 536, 540 (8th Cir. 1980) (district court's refusal to grant subpoena prejudiced plaintiff when the transcript made clear that the witness would have provided key testimony in support of plaintiff's claim).

The jury apparently found Eaves's testimony credible. From the record we have before us, we cannot conclude that it is likely that, had the subpoenas been

---

[2]Pointer does not argue that he was prejudiced by the district court's failure to enforce the subpoena served on Caruso.

enforced, Carbol and McClintock would have contradicted Eaves's testimony and the jury would have rejected Eaves's stated reasons for firing Pointer and instead concluded that he fired Pointer because of his race.

The judgment is affirmed.

_____